UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFREDO RANGEL-BUENDIA<br><br>a.k.a. "Chicles,"<br><br>Defendant. | CRIMINAL NO. 08-CR-057-08 |

### GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

The United States respectfully moves to detain the Defendant, Alfredo Rangel-Buendia, also known as "Chicles," pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a high-ranking member of an international drug trafficking organization ("DTO") that was engaged in extreme violence. As discussed below, the Defendant is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time for his serious offenses, including a mandatory minimum sentence; is known to use and carry firearms and utilize violence to maintain his position of power; potentially has access to substantial amounts of drug proceeds in the form of untraceable cash; has no immigration status in the United States; and is subject to an immigration detainer. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

### BACKGROUND

On August 12, 2009, the United States District Court for the District of Columbia issued an arrest warrant for Rangel-Buendia based on an indictment in this case. On May 9, 2013, a grand

1

jury sitting in the District of Columbia returned and filed a Fourth Superseding Indictment (the "Indictment") against the Defendant and his co-defendants, charging him with:

- Count One: Conspiring to manufacture and distribute cocaine and marijuana, knowing and intending that the cocaine and marijuana would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963; and

- Count Two: Attempted distribution of cocaine, knowing and intending that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963 and 18 U.S.C. § 2.

The Indictment is the product of an extensive, long-term, and ongoing investigation conducted by the Drug Enforcement Administration into the drug-trafficking activities of the Gulf Cartel and Los Zetas, two related drug-trafficking organizations ("DTOs") operating in Mexico. The Government anticipates that the evidence at trial will show that from in or about 2000 through February 2010, the Defendant conspired with others to manufacture and distribute cocaine and marijuana, knowing it would be unlawfully imported into the United States.

If this case proceeds to trial, the Government expects its evidence to consist of testimony from cooperating witnesses with direct communications and interactions with the Defendant discussing drug trafficking and drug-trafficking related activities, including extreme violence, and audio recordings of the Defendant and others discussing their criminal activities. This evidence will show that, during the relevant time period, Defendant was a high-ranking member of the Zetas Cartel.

The Zetas Cartel (also known as "Los Zetas" and referred to here as "Zetas"), was a violent and prolific drug trafficking organization that imported tonnage quantities of cocaine and

marijuana into the United States while using terroristic violence to control large swaths of northern Mexico, including along the border between Mexico and the United States. The Zetas operated primarily in the Mexican states of Coahuila, Nuevo Laredo, Tamaulipas, Zacatecas, San Luis Potosi, and Veracruz. Between 2000 and 2010, the Zetas formed an alliance with the Gulf Cartel, a group of drug traffickers primarily based in northern Mexico, to form an organization known as "The Company." The Gulf Cartel used the Zetas as the armed militaristic wing of the Cartel to maintain control of drug trafficking routes throughout Mexico.

The Zetas carried out numerous acts of violence, including murders, assaults, kidnappings, assassinations and acts of torture. The Zetas committed these acts of violence for a variety of reasons, including: (1) promoting and enhancing the prestige, reputation, and position of the Zetas with respect to rival criminal organizations, including other drug trafficking organizations; (2) preserving, protecting, and expanding the power, territory, and criminal ventures of the Zetas; (3) keeping victims, rivals, and law enforcement in fear of the Zetas, its members, and its associates; (4) disciplining its members and associates by punishing disloyalty and failure; (5) enriching the members and associates of the Zetas through criminal activity, including narcotics trafficking, theft, extortion, and human smuggling; and (6) seeking reprisal against elected and public officials, members of the military and law enforcement, and others for failing to provide services to the Zetas.

Defendant was a high-ranking member of the Zetas, serving as a plaza boss of Miguel Aleman, Mexico. In that role, he controlled and coordinated the movement of illegal narcotics into the United States and the transports of the bulk currency from the sales of those narcotics back to the cartel; bribed law enforcement officers to ensure drug loads would not be disturbed; and utilized weapons and violence to maintain control over the plaza and the Zetas drug trafficking

routes. The Defendant is a Mexican national with no known contacts in the United States, other than any coconspirators. He was paroled into the United States and has no valid visa to remain here. An Immigration and Customs Enforcement detainer is in place if Defendant is released from the custody of the U.S. Marshal's Service.

## LEGAL STANDARDS

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' *or* a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) (emphasis added); *see also* 18 U.S.C. § 3142(c)(1) ("If the judicial officer determines that the release . . . will not reasonably assure the appearance of the person as required *or* will endanger the safety of any other person or the community . . . ." (emphasis added)). The Government bears the burden of establishing the defendant's danger to the community by clear and convincing evidence, but the Government need only prove the Defendant poses a flight risk by a preponderance of the evidence. *United States v. Munchel*, 533 F. Supp. 3d 1, 8 (D.D.C. 2021) (dangerousness); *Vasquez-Benitez*, 919 F.3d at 551 (flight risk).

When the court finds that there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act or Controlled Substances Import and Expert Act, that finding triggers a rebuttable presumption that no condition or combination of conditions can reasonably assure the defendant's appearance and the safety of others when the court finds. 18 U.S.C. § 3142(e)(3).  In making the final determination as to whether the defendant should be detained pending trial, the

court must take into account: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ARGUMENT

Defendant should be detained while awaiting trial because he both poses a dangerous to others and the community and he poses a serious flight risk.

### I. There Is a Rebuttable Presumption that Defendant Is Dangerous and a Flight Risk

Both counts against the Defendant in the Indictment carry a rebuttable presumption that the Defendant is both dangerous and a flight risk: Count One charges Defendant with conspiring to distribute 5 kilograms or more of cocaine and 1,000 kilograms or more of marijuana for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963, which carries a mandatory minimum penalty of ten years' imprisonment; and Count Two charges Defendant with attempted distribution of 5 kilograms or more of cocaine for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963, which again carries a mandatory minimum penalty of ten years' imprisonment. Each of these offenses are qualifying offenses under 18 U.S.C. § 3142(e)(3)(a). Thus, the Court's analysis here begins with a presumption that there is no condition or combination of conditions that will reasonably assure the appearance of the Defendant and the safety of the community.

### II. All Four Factors Weigh in Favor of the Defendant's Pre-Trial Detention

Defendant cannot overcome this rebuttable presumption in favor of pretrial detention in this case because § 3412(g)'s factors all weigh heavily against him.

a.  The Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses heavily weigh in favor of detention. As described above, Defendant is charged with two serious offense counts and faces a lengthy prison term as a result. He faces charges that he engaged in a decade-long drug trafficking conspiracy to import narcotics into the United States, and in furtherance of that conspiracy, he used weapons and significant violence to preserve the Zetas' power and territory. As a result of his conduct, Defendant faces a significant penalty, starting with a mandatory minimum sentence of ten years' imprisonment. Because of the amount of cocaine and marijuana attributable to his conduct, he faces a base offense level under the U.S. Sentencing Guidelines of 38, and a number of possible enhancements, including for leadership, bribery, and use of a weapon to name a few. With a criminal history category of I, Defendant faces a Guidelines range of life imprisonment.

The charges against the Defendant, and the penalties he faces as a result, underscore both that he poses a danger to others and that he is a flight risk. *See* 18 U.S.C. § 3142(g)(1) (court should consider whether the offense is a crime of violence or involves a controlled substance, firearm, explosive, or destructive device); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding that serious nature of offenses and punishments Congress provided for those offenses gave the defendant substantial incentive to flee); *United States v. Anderson*, 384 F.Supp.2d 32, 36

(D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to flee).[1]

### b. The Weight of the Evidence Against the Defendant

The weight of the evidence against the Defendant also weighs heavily in favor of his pretrial detention. Throughout the course of the investigation, federal law enforcement agents employed a variety of techniques to investigate the Zetas, resulting in substantial evidence against the Defendant, including testimony from cooperating witnesses with direct communications and interactions with the Defendant discussing drug trafficking and drug-trafficking related activities—including the use of weapons and violence—as well as audio recordings of the Defendant and his associates discussing their criminal activities.

This evidence not only demonstrates Defendant's dangerousness, *see United States v. Vergara*, 612 F. Supp. 2d 36, 37-38 (D.D.C. 2009), but it also shows that Defendant has considerable incentive to flee, *see United States v. Chansley*, 525 F. Supp. 3d 151, 170 (D.D.C. 2021) ("The overwhelming weight of the evidence may further prompt defendant to flee and thus weighs in favor of pre-trial detention.").

---

[1] Indeed, courts have recognized that Congress created a rebuttable presumption in favor of pretrial detention because Congress found "based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *United States v. Alatishe*, 768 F.2d 364 at 370 n.14 (D.C. Cir. 1985) (rebuttable presumption for serious drug trafficking offenses included because "the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country," means that "these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences") (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S.Code Cong. & Admin.News 1984, p. 3203).

  c. <u>The History and Characteristics of the Person, and the Nature and Seriousness of the Danger to Others</u>

Given the nature of the Defendant's history and characteristics, the Government addresses both that factor and the nature and seriousness of the Defendant's danger to others together. These factors weigh in favor of detaining the Defendant before trial because he poses a risk to the safety of others and his risk of flight is high.

*Dangerousness*. At trial, the Government anticipates presenting significant evidence that the Defendant engaged in extreme acts of violence as a high-ranking member of the Zetas in furtherance of decade-long conspiracy that had the ultimate objective to import massive quantities of cocaine and marijuana into the United States, a direct threat to the health and safety of U.S. residents around the country. If released pending trial, there is serious risk that Defendant will continue to pose a risk to the safety of others and the community through his drug trafficking activities.

*Flight Risk*. Defendant's history and characteristics establish his serious risk of flight in this case. He is a Mexican national that lacks any known ties to the District of Columbia or the United States other than his coconspirators; he has significant familial and criminal connections in Mexico; and he has potentially significant resources at his disposal through his criminal activities, including drug proceeds in the form of untraceable cash. Moreover, the Defendant has been brought to the United States solely for the purpose of his federal prosecution, and a U.S. Immigration and Customs Enforcement detainer is in place if he is released from the custody of

8

the U.S. Marshal's Service. Defendant has no reason to remain in this country other than this criminal case and thus presents a significant flight risk if released from custody.

For these reasons, the last two § 3142(g) factors also weigh heavily in favor of Defendant's pretrial detention.

## **CONCLUSION**

The relevant inquiry for the Court is whether there are conditions that can be placed upon the Defendant that will reasonably assure the Defendant's appearance at future court proceedings and the safety of the community. For Defendant, there are none. The United States respectfully requests that the Court detain the Defendant pending trial.

Respectfully submitted this 28th day of February, 2025.

                                    MARLON COBAR, Chief
                                  Narcotic and Dangerous Drug Section
                                  Criminal Division
                                  United States Department of Justice

By:     */s/ Jayce Born*
           Jayce Born
           Kirk Handrich
           Trial Attorneys
           Melanie Alsworth
           Acting Deputy Chief
           Narcotic and Dangerous Drug Section
           Criminal Division
           United States Department of Justice
           145 N Street, Northeast
           Washington, D.C. 20530
           (202) 616-2656
           jayce.born@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was served via ECF to counsel of record, this 28th day of February, 2025.

                                                            By:     */s/ Jayce Born*
                                                                                 Jayce Born
                                                                                 Trial Attorney
                                                                                 Narcotic and Dangerous Drug Section
                                                                                 Criminal Division
                                                                                 United States Department of Justice