**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 08-CR-057 (TNM)** |
| **v.** | |
| **MIGUEL TREVINO MORALES,**<br>also known as "Z-40," "Zeta40," "40,"<br>"Cuarenta," "Mike,"| |
| **ALFREDO RANGEL-BUENDIA,**<br>also known as "Chicles,"| |
| **OMAR TREVINO MORALES,**<br>also known as "42," "Z-42,"| |
| **Defendants.** | |

## MOTION FOR A COMPLEX CASE DESIGNATION AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States respectfully submits this motion seeking (1) a complex case designation and, in turn, (2) to exclude time from the date by which the above-named defendants must be tried under the Speedy Trial Act, 18 U.S.C. § 3161, until a trial date that allows the parties reasonable time to prepare. Courts can exclude any period of delay resulting from a continuance of the trial date granted for the ends of justice because of the complexity of the case. *See* 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii). Given the nature of this case and the expected volume and nature of pretrial discovery and motions, the Court should do so here.

## BACKGROUND

### I.     Factual Background

This case is the product of an extensive, long-term investigation conducted by the Drug Enforcement Administration, Homeland Security Investigations, and Federal Bureau of

Investigation into the drug-trafficking activities of the Gulf Cartel and Los Zetas, two related drug-trafficking organizations operating in Mexico. The Zetas Cartel (also known as "Los Zetas" and referred to here as "Zetas"), was a violent and prolific drug trafficking organization that imported tonnage quantities of cocaine and marijuana into the United States while using terroristic violence to control large swaths of northern Mexico, including along the border between Mexico and the United States.

The Zetas operated primarily in the Mexican states of Coahuila, Nuevo Laredo, Tamaulipas, Zacatecas, San Luis Potosi, and Veracruz. Between 2000 and 2010, the Zetas formed an alliance with the Gulf Cartel, a group of drug traffickers primarily based in northern Mexico, to form an organization known as "The Company." The Gulf Cartel used the Zetas as the armed militaristic wing of the Cartel to maintain control of drug trafficking routes throughout Mexico. At the beginning, Heriberto Lazcano Lazcano headed the Zetas organization. He recruited both members of the Mexican special forces, along with drug traffickers who never served in the military or with a police force, to join the organization. The Zetas and Gulf Cartel's alliance fractured in the summer of 2010 after a period of intense violence between the organizations. The Zetas then operated as an independent drug trafficking organization that imported tonnage quantities of cocaine and marijuana into the United States.

The Zetas carried out numerous acts of violence, including murders, assaults, kidnappings, assassinations, and acts of torture. In carrying out these acts of violence, its members possessed, carried, used, and brandished firearms, including machine guns, semi-automatic rifles, and pistols. The Zetas committed these acts of violence for a variety of reasons, including: (1) promoting and enhancing the prestige, reputation, and position of the Zetas with respect to rival criminal organizations, including other drug trafficking organizations; (2)

preserving, protecting, and expanding the power, territory, and criminal ventures of the Zetas; (3) keeping victims, rivals, and law enforcement in fear of the Zetas, their members, and their associates; (4) disciplining its members and associates by punishing disloyalty and failure; (5) enriching the members and associates of the Zetas through criminal activity, including narcotics trafficking, theft, extortion, and human smuggling; and (6) seeking reprisal against elected and public officials, members of the military and law enforcement, and others for failing to provide services to the Zetas.

Defendant Rangel-Buendia was a high-ranking member of the Zetas, serving as a plaza boss of Miguel Aleman, Mexico, until his arrest by Mexican authorities in August 2008. In that role, he controlled and coordinated the movement of illegal narcotics into the United States and the transports of the bulk currency from the sales of those narcotics back to the cartel; bribed law enforcement officers to ensure drug loads would not be disturbed; and utilized weapons and violence to maintain control over the plaza and the Zetas drug trafficking routes.

Defendants Miguel and Omar Trevino Morales joined the Zetas in or around January 2003. By 2011, they had ascended to the highest levels of the Zetas' leadership. That same year, they executed dozens of residents living around Allende, a small town located in Coahuila, Mexico, in approximately March 2011. After Lazcano's death in October 2012, Defendant Miguel Trevino Morales and Defendant Omar Trevino Morales took over as the leaders of the Zetas. After they were arrested by Mexican authorities, they renamed the Zetas to Cartel del Noreste ("CDN"), which the U.S. Department of State designated as a Foreign Terrorist Organization on February 20, 2025. The two continued to control the Cartel and installed various family members to operate the CDN while they were incarcerated in Mexico. Through the date of the Fifth Superseding Indictment, the CDN remained the successor cartel to the Zetas and

continued the criminal drug trafficking activities previously conducted by the Zetas, including its considerable use of weapons and violence, and Defendants Miguel and Omar Trevino Morales remained its leaders.

## II.    Procedural History

On May 9, 2013, a grand jury sitting in the District of Columbia returned and filed a Fourth Superseding Indictment charging Defendant Rangel-Buendia with (1) conspiring to manufacture and distribute cocaine and marijuana, knowing and intending that the cocaine and marijuana would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963; and (2) attempted distribution of cocaine, knowing and intending that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963 and 18 U.S.C. § 2. Fourth Superseding Indictment (May 9, 2013), ECF No. 159. These charges carry a ten-year mandatory minimum sentence and a maximum sentence of life imprisonment.

On August 20, 2024, a grand jury sitting in the District of Columbia returned and filed a Fifth Superseding Indictment (together with the Fourth Superseding Indictment, the "Indictments") against Defendant Miguel Trevino Morales and Defendant Omar Trevino Morales, charging them with:

- Count One: Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. §§ 848(a), 848(b), 848(c), and 848(e)(1)(A);

- Count Two: Conspiring to distribute cocaine and marijuana, intending, knowing, and having reasonable cause to believe that the cocaine and marijuana would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963;

- Count Three: Use of a firearm, including a machine gun, destructive device, semi-automatic assault weapon or pistol, during and in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime, where one or more of such firearms was brandished; discharged; a semi-automatic assault weapon; a machine gun; and a destructive device, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2; and

- Count Four: Conspiring to commit international money laundering, in violation of 21 U.S.C. §§ 1956(a)(2)(A), 1952(a)(2)(B), and 1956(h).

Fifth Superseding Indictment (Aug. 20, 2024), ECF No. 578. Additionally, with respect to Count One, the Indictment alleges nineteen specific violations of 21 U.S.C. §§ 846, 848(e), 952(a), 959(a), 960, and/or 963, including 5 murder conspiracy violations, 7 international cocaine distribution or attempted international cocaine distribution violations, and 7 cocaine importation or attempted cocaine importation violations. Under 21 U.S.C. § 858(e), Count One is eligible for the death penalty. Count Two carries a ten-year mandatory minimum sentence and a maximum penalty of life imprisonment. Count Three carries a mandatory consecutive sentence ranging from five years' to life imprisonment. Count Four carries a maximum penalty of twenty years' imprisonment.

On or about February 27, 2025, the Defendants were expelled from Mexico, transported to the United States, and arrested by U.S. authorities on their respective Indictments. All three defendants appeared before Magistrate Judge Moxila A. Upadhyaya in the United States District Court for the District of Columbia on February 28, 2025, for their initial appearances, and Defendants Miguel Trevino Morales and Omar Trevino Morales were held in custody pursuant to 18 U.S.C. § 3142(e)(1) after both Defendants waived their right to a detention hearing. On

March 4, 2025, Defendant Rangel-Buendia was arraigned by Judge Upadhyaya and waived his right to a detention hearing, and the Court ordered his pre-trial detention pursuant to 18 U.S.C. § 3142(e)(1). Defendants Miguel Trevino Morales and Omar Trevino Morales are scheduled to be arraigned on March 14, 2025. The Court has not yet set a trial date in this matter.

The Government currently is compiling discovery (from the Narcotic and Dangerous Drug Section of the Criminal Division for all three Defendants and, as to Defendants Miguel Trevino Morales and Omar Trevino Morales, from two U.S. Attorney's Offices) to comply with its obligations. This discovery includes voluminous materials related to a multi-year, multi-district, and multi-national investigation, consisting of hundreds of thousands of intercepted electronic communications; law enforcement reports, photographs, and other documents related to drug and/or money seizures attributable to the Defendants; and relevant evidence the Government has obtained or expects to obtain from foreign authorities. The vast majority of the discovery in this case is in Spanish and will require certified transcription and translation before its introduction and use at trial. The Government's initial discovery production alone is expected to consist of more than 400,000 intercepted Spanish-language audio communications. The Government also anticipates that this case will involve motions practice pursuant to the Classified Information Procedures Act ("CIPA").

## LEGAL STANDARD

"The Speedy Trial Act requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." *Henderson v. United States*, 476 U.S. 321, 326 (1986). The Act provides for certain "periods of excludable delay," listed at 18 U.S.C. § 3161(h). *United States v. Van Smith*, 530 F.3d 967, 969 (D.C. Cir. 2008). Relevant here, a court can exclude "[a]ny period of delay" when

it finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *See United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014) (quoting 18 U.S.C. § 3161(h)(7)(A)). In deciding whether to grant a continuance for the ends of justice, the judge must consider, *inter alia*, "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii).

## ARGUMENT

The Court should designate this case as a complex one and, pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii), exclude any period of delay from the date by which the above-named defendants must be tried under the Speedy Trial Act to allow the parties reasonable time to prepare for trial. .

As explained above, this case involves a complex international narcotics trafficking conspiracy (for all three Defendants) and continuing criminal enterprise (for Defendants Miguel and Omar Trevino Morales) investigated over the course of decades with a corresponding substantial volume of discovery, including significant Spanish-language discovery and foreign evidence, expected. This is the precise type of case that warrants a complex case designation and, in turn, an extension of time under the Speedy Trial Act to allow the parties additional time to adequately prepare for trial. Indeed, courts in this district have routinely designated cases as complex and granted extensions under 18 U.S.C. § 3161(h)(7)(B)(ii) in cases like this one. *See, e.g.*, *United States v. Archbold-Manner*, 577 F. Supp. 2d 291, 292 (D.D.C. 2008) (case involved 10,000 Spanish-language documents and extensive foreign-language wiretap evidence, as well as

7

physical evidence tested by foreign chemists and a large number of defendants); *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 28 (D.D.C. 2009) (tolling Speedy Trial Act in three-defendant international drug conspiracy case where evidence, including wiretap evidence, must be translated into English and witnesses and other pieces of evidence must be brought to the United States for trial); *see also Rice*, 746 F.3d at 1078-79; *United States v. Zaitar*, 858 F. Supp. 2d 103, 109 (D.D.C. 2012).

Moreover, that the Government expects this case will involve one or more rounds of CIPA briefing (in addition to any other motions practice) reinforces that this case should be designated as complex and time under the Speedy Trial Act be tolled accordingly. *See United States v. Raymond*, 656 F. Supp. 3d 236, 240 (D.D.C. 2023) (noting that CIPA litigation weighed in favor of a complex case designation and noting that "[a]lthough CIPA briefing does not render a case complex or unusual *per se*, multiple courts hav[e] tolled Speedy trial time on this basis"). And, with respect to Defendants Miguel and Omar Trevino Morales, that they face the death penalty if convicted of Count One in the Fifth Superseding Indictment further weighs in favor of a complex case designation and extension under the Speedy Trial Act for their trials. The parties will need additional time to submit the necessary materials for the United States Attorney General to decide whether the United States will seek the death penalty. *See, e.g.*, *United States v. Martinez*, 542 F. Supp. 3d 1170, 1192 (D.N.M. 2021) (noting that the Court granted the parties' complex case motion and excluded time under the Speedy Trial Act where discovery was voluminous and the case involved a death-penalty-eligible charge); *United States v. Bernacett Cosme*, 127 F. Supp. 2d 271, 273 (D.P.R. 2001) (same, in case involving complicated pretrial investigations and the potential death penalty); *see also United States v.*

*Murillo*, 288 F.3d 1126, 1132 (9th Cir. 2002) (holding that "the death penalty consideration process is a valid reason to grant an ends of justice continuance").

In sum, because of the complexity and scope of the charges against the Defendants, including one charge against Defendants Miguel and Omar Trevino Morales that carries a potential death sentence; the voluminous discovery, including substantial Spanish-language and foreign evidence; and the likelihood of CIPA motions practice, this case is a complex one under 18 U.S.C. § 3161(h)(7)(B)(ii). Accordingly, the Government respectfully submits that the ends of justice would be served by excluding any period of delay under the Speedy Trial Act until a trial in this matter, and that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

### IV.    <u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests that this Court grant this motion, designate this case as a complex case, and exclude any period of delay until trial under Sections 3161(h)(7)(A) and (h)(7)(B)(ii) of the Speedy Trial Act.

Respectfully submitted this 12th day of March, 2025,

MARLON COBAR
Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By:    */s/ Jayce Born*
MELANIE ALSWORTH
JAYCE BORN
KIRK HANDRICH
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 514-0422

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent via ECF, to counsel of record for

Defendants Miguel Trevino Morales, Omar Trevino Morales, and Alfredo Rangel-Buendia, this

12th day of March, 2025.


By:    _/s/ Jayce Born_____
        Jayce Born
        Trial Attorney
        Narcotic and Dangerous Drug Section
        Criminal Division
        U.S. Department of Justice